# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| NILESH SHAH, | : | Case No. 1:22-cv-312 |
| *Plaintiff,* | : | |
| | : | |
| vs. | : | Judge Jeffery P. Hopkins |
| | : | |
| FORTIVE CORPORATION, *et al.,* | : | |
| | : | |
| *Defendants.* | : | |

## OPINION AND ORDER

The claims before this Court arise out of an employment contract dispute between Plaintiff Nilesh Shah (hereinafter referred to as "Plaintiff" or "Shah") and his former employers, Defendants Advanced Sterilization Products ("ASP"), Advanced Sterilization Products Service's ("ASPS"),[1] and Fortive Corporation ("Fortive"), (hereinafter referred to collectively as, "Defendants"). Among other claims asserted in the Complaint, Shah alleges primarily that he is owed payments from Defendants to cover foreign taxes he incurred while working as an expat in Singapore under certain provisions of his employment agreements with Defendants. Doc. 1, PageID 8. Defendants, however, contend that payment of those taxes was never promised, and nor was it ever part of any employment agreements between the parties. Doc. 19-1, PageID 138–39. After Shah filed suit, Defendants filed a Motion to Dismiss (Doc. 19). Thereafter, Plaintiff filed a Memorandum in Opposition (Doc. 20), to which Defendants filed a Reply Memorandum in Support (Doc. 23).

---

[1] As will be more fully discussed in this Opinion and Order, Defendants ASP and ASPS are both wholly owned subsidiaries of Defendant Fortive. Accordingly, Defendants ASP and ASPS are hereinafter referred to together as the "ASP Entities."

For the reasons stated below, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss (Doc. 19).

## I.     BACKGROUND

For purposes of analyzing a motion to dismiss, the Court views as true all factual allegations stated in the Complaint (Doc. 1). *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### A.     Defendants Hire Shah and the Parties Execute Two Employment Contracts.

Plaintiff Shah was born in the country of India but in 2001 became a naturalized U.S. citizen. Doc. 1, PageID 3. Under a fair reading of the Complaint, Shah contends that he worked overseas as a sales executive for all three Defendant companies involved in this lawsuit and that he maintained a residence in Singapore. Doc. 1, at PageID 3–4. Shah further alleges that he signed the first employment contract with Fortive/the ASP Entities in March of 2019 and commenced work that May. *Id.*; *see also* Doc. 1-1. According to the Complaint, he initially served as the Vice President of International Sales & Service. Doc. 1, PageID 3–6; *see also* Doc. 1-1. And in 2021, he was promoted to Vice President and General Manager of Global Commercial and remained in that position until March 30, 2022, when he was terminated. Doc. 1, PageID 3–6; *see also* Doc. 1-2.

For purposes of deciding this case it is important to understand the interrelationship that existed between each of the Defendant companies. Defendants are three corporate entities with varying residencies and headquarters all located within the United States. Defendant ASP is a Delaware corporation with its principal place of business in Irvine, California. Doc. 1, PageID 3. Defendant ASPS does business in Ohio but is a New Jersey corporation also headquartered in Irvine, California. *Id.* Defendant Fortive is a Delaware

corporation with its principal place of business in Everett, Washington. Doc. 1, PageID 3. Important here, the ASP Entities are both wholly owned subsidiaries of Fortive and engage in business to provide infection prevention products, solutions, and processes to healthcare practitioners and facilities. Doc. 1, PageID 3.

Among this family of companies, Shah signed two employment contracts related to the positions he held with Fortive/the ASP Entities, including the 2019 Employment Contract to become Vice President of International Sales & Service (Doc. 1, PageID 3–6) and the 2021 Employment Contract to become Vice President and General Manager of Global Commercial. *See generally* Doc. 1-1 ("the 2019 Employment Contract"); Doc. 1-2 ("the 2021 Employment Contract") (together, "the Employment Contracts"). Ostensibly, Plaintiff contends that Defendants are interconnected companies and that as a practical matter he was employed by and worked for all three businesses under the terms of the two Employment Contracts the parties entered in 2019 and 2021. Doc. 1, PageID 3–6.

B. **The Employment Contracts Include Language Concerning Payment of Singapore Taxes and Certain Employee Benefits.**

Both Shah's Employment Contracts specify that his position was located in Cincinnati, Ohio, but as noted, that he would remain on expat assignment and reside in Singapore. Doc. 1-1, PageID 15. Throughout Shah's employment with Defendants, he lived in Singapore where allegedly he continues to reside at present. Doc. 1, PageID 12; Doc. 10, PageID 89. Relevant to the dispute now before the Court, Shah's Employment Contracts also include language that the companies would pay for his Singapore taxes and for certain other employee benefits associated with his having to maintain a residence in Singapore as an expat. *See* Docs. 1-1, 1-2.

When negotiating the Employment Contracts, Shah contends that he stressed that it was critical that Defendants be required to pay any and all Singapore taxes accrued while he worked on assignment there. Doc. 1, PageID 4. Consequently, both Shah's Employment Contracts include "Singapore Expat Allowances."  Both Contracts contain nearly identical provisions concerning promises by "the company" to pay for "tax assistance" and for "Singapore tax obligations and tax filing assistance in Singapore." *Id.*; Doc. 1-1, PageID 16; Doc. 1-2, PageID 19.

As it relates to those taxes, Shah's 2019 Employment Contract provides, in relevant portion, as follows:

> **Singapore Expat Allowances**: You will be eligible for a company car in Singapore while on expat assignment. Further, you will be eligible for a housing allowance of $50,000 annually, paid monthly while on assignment. **The company will also pay for tax assistance while on assignment in Singapore which includes tax obligations and tax filing assistance in Singapore.**

Doc. 1-1, PageID 16 (emphasis added).

In similar fashion, Shah's 2021 Employment Contract provides:

> **Singapore Expat Allowances**: You will continue to be eligible for transportation allowance for the purpose of parking, tolls, and petrol while on expat assignment. This amount is equivalent to approximately $1,975.00 monthly. Further, you will continue to be eligible for a housing allowance of $50,000.00 annually, paid monthly while on assignment. **The company will also continue to pay for tax assistance while on assignment in Singapore, which includes Singapore tax obligations and tax filing assistance in Singapore.**

Doc. 1-2, PageID 19 (emphasis added).

### C.  Plaintiff Becomes Concerned Over Defendants' Failure to Pay Singaporean Taxes and His Treatment by Defendants.

At some point during Shah's employment, Defendants ceased paying all of the Singaporean tax debt Shah began to accrue.  According to Shah, Defendants in 2020 paid all

4

his accrued 2019 Singapore tax obligations as called for under the Singapore Expat Allowances clause contained in the 2019 Employment Contract[2] Doc. 1, PageID 4. However, also according to Shah, Defendants discontinued paying his Singapore tax obligations accrued during the 2020 tax year and for each succeeding tax year thereafter until his termination in derogation of the provisions in his 2019 and 2021 Employment Contracts. Doc. 1-2, PageID.[3]

Concerned with his growing Singapore tax liability, in February of 2022, Shah contacted Defendants' accounting firm KPMG. In that communication, Shah asked KPMG to inquire if Defendants would be reimbursing him for the unpaid Singapore taxes. Doc. 1, PageID 5. Later in February of 2022, KPMG responded to Shah's inquiry by reassuring him with an email that stated:

> [We] talked with ASP regarding your employment contract and taxes. . . . What this means for 2020 is that you would not owe ASP anything related to 2020 taxes. For 2019, ASP would owe you the Singapore tax you funded on the ASP portion [of] the 2019 Singapore liability.

*Id.* at PageID 6; Doc. 9-4, PageID 78. The email Shah received from KPMG in February 2022 reaffirmed the message Shah had gotten earlier from KPMG in another email sent on January 27, 2022. In the January 2022 email, KPMG assured Shah that "ASP should cover 100% of Singapore tax on ASP income." Doc. 1, PageID 6. According to Shah, he received the February 2022 email from KPMG approximately one month before his firing. *See id.*

---

[2] Plaintiff alleges that, while Defendants paid Plaintiff's 2020 tax obligations accrued in Singapore, Doc. 1, PageID 4, Defendants have demanded that Plaintiff repay a portion of the 2020 tax contribution because Plaintiff received a tax refund on his 2020 U.S. income taxes. *Id.* at PageID 5.

[3] Plaintiff notes that he specifically negotiated for these provisions within his Contracts with Defendants, and that it was one of the principal reasons that he agreed to work for them. Doc. 1, PageID 4.

In the Complaint, Shah alleges that Defendants breached the "Expat Allowances" provisions of his Employment Contracts by failing to reimburse him for the unpaid portions of the 2019 and 2022 Singapore tax obligations and all of his 2021 Singapore taxes. Doc. 1, PageID 4–5. As a result of Defendants' breach, Shah contends he is owed $218,167.74 (in Singaporean dollars) for those tax years. *Id.* at PageID 7. Shah further contends if the Singapore tax continues to go unpaid, he faces the possibility of having his bank accounts frozen, his assets seized, and possible imprisonment by Singaporean authorities. *Id.*

## D. Defendants Terminate Plaintiff Under Conditions That Plaintiff Disputes.

As noted, Defendants eventually terminated Shah on March 30, 2022. Shah claims that his termination was due to racial animus, and that in the wake of being terminated, Defendants retained compensation and refused to pay or reimburse for benefits that rightfully are due him under the "Expat Allowances" clause and related provisions of the 2019 and 2021 Employment Contracts at issue in this case.

### i. Plaintiff's Termination.

During Plaintiff's time with Defendants, a president associated with the ASP Entities, Aisha Barry, eventually became his manager. Doc. 1, PageID 6. Shah alleges that Ms. Barry subjected him to deliberate public humiliation. One example was when Ms. Barry limited Shah's ability to respond to colleague feedback with, "thank you for your feedback." *Id.* Plaintiff alleges that this treatment and his ultimate termination in 2022 were due to racial animus. *Id.* at PageID 10.

Shah's termination occurred during a short business trip he took to California. Doc. 8, PageID 46. *See also* Doc. 10, PageID 85. Plaintiff alleges that the ASP Entities never gave him any forewarnings or reprimands about his job performance being subpar before being

terminated. Doc. 1, PageID 6. According to Shah, he even received positive feedback that his performance was "meeting expectations" in 2021. *Id.* Nevertheless, Plaintiff alleges that he was fired on March 30, 2022, without notice and without cause. *Id.*

      **ii.**    **Plaintiff Also Claims He Is Owed PTO Post-Termination.**

In addition to the "Singapore Expat Allowances" reimbursement provisions of his Employment Contracts, Shah also alleges that Defendants promised him paid time off ("PTO"). According to Plaintiff, he was entitled to a certain amount of annual PTO and that upon his separation from the company in March of 2022, he was entitled to payment of the equivalent dollar value for all unused PTO that had been accumulated. Doc. 1, PageID 11. Without articulating how much PTO he accumulated, Plaintiff relies upon language contained in his Employment Contracts as support for the promise from Defendants for the PTO benefit. His 2019 Employment Contract, for example, provides as follows: in:

> **Benefits**: You will be eligible to participate in any employee benefit plan that the Company has adopted or may adopt, maintain, or contribute to for the benefit of its regular employees, subject to satisfying any applicable eligibility requirements.

Doc. 1-1. PageID 15. Similarly, the 2021 Employment Contract states:

> **Benefits**: You will be eligible to participate in any employee benefit plan that the Company has adopted or may adopt, maintain, or contribute to for the benefit of its regular employees, subject to satisfying any applicable eligibility requirements. You will be eligible to participate in the Fortive 401(k) retirement plan subject to the applicable plan.

Doc. 1-2, PageID 18.

## II.    PROCEDURAL HISTORY

A few months following his termination, on June 2, 2022, Shah filed the current Complaint asserting five claims against Defendants, including two separate breach of contract claims, one for the unpaid Singaporean tax assistance, and another for Defendants' failure to

pay Plaintiff his unused PTO; a request for declaratory judgment under 28 U.S.C. § 2201; a claim of racial discrimination under 42 U.S.C § 1981; and in the alternative, a quantum meruit/unjust enrichment claim based on Defendants' retention or refusal to pay him the value of Shah's unused PTO after separation. Doc. 1, PageID 8–11.

Fearing reprisal from Singapore authorities for the unpaid taxes, on June 10, 2022, Plaintiff filed a motion for a preliminary injunction and temporary restraining order. *See* Doc. 6. In the motion, Shah asked this Court to order Defendants to "remit all owed income taxes and penalties to the proper Singaporean authorities." Doc. 6, PageID 42. Following an evidentiary hearing, the Court denied Plaintiff's request for a preliminary injunction and temporary restraining order. Doc. 14.

Then on July 14, 2022, Defendants moved to dismiss Plaintiff's Complaint in its entirety. Doc. 19. Defendants' Motion to Dismiss (Doc. 19) is now before the Court.

## II.    STANDARD OF REVIEW

Defendants move to dismiss the Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6). Doc. 19. Under Fed. R. 12(b)(6) a plaintiff must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [the plaintiff] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted).

In making that assessment, the court must similarly "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett*, 528 F.3d at 430 (internal quotation omitted). That

is true, however, only as to factual allegations. The court need not accept as true Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 546–47. Under the *Twombly/Iqbal* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process.[4] "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

## III.   LAW AND ANALYSIS

Defendants first assert that Plaintiff's claims fail because he impermissibly grouped Defendants together in his Complaint. Doc. 19-1, PageID 136–38. Second, Defendants argue that Plaintiff's claims individually lack merit. *See generally* Doc. 19; Doc. 19-1, PageID 138–40. For the reasons discussed below, the Court **DENIES** in part and **GRANTS** in part Defendants' Motion to Dismiss.

---

[4] While the Court primarily relies on allegations in the complaint in deciding on a 12(b)(6) motion, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint . . . ." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). In addition, "[a] court may rely on documents outside the pleadings, if those documents 'simply [fill] in the contours and details of the plaintiff's complaint, and [add] nothing new,' without converting the motion to dismiss into a motion for summary judgment." *Bd. of Trustees Sabis Intl Sch. v. Montgomery*, 205 F. Supp. 2d 835, 843 (S.D. Ohio 2002) (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (first alteration added)).

Where there has been a TRO hearing prior to the Court's determination on a defendant's motion to dismiss, courts in the Sixth Circuit have consulted the TRO filings and a plaintiff's motions in support thereof as court filings and docket entries because they are "items appearing in the record of the case" and "matters of public record." *See Grise v. Stewart Cnty. Sch. System*, No. 3:21-CV-00058, 2021 WL 4864490, at *8 (M.D. Tenn. Oct. 19, 2021).

### A.      Plaintiff's Grouping of Defendants Does Not Warrant Dismissal.

As a threshold issue, Defendants attempt to dispose of each of Plaintiff's five claims on the basis of impermissible group pleading. Doc. 19-1, PageID 136. Defendants argue that, because Plaintiff grouped the Fortive and the ASP Entities together in his Complaint, the Complaint does not give each individual defendant sufficient notice of the claims asserted against each of them, thus failing to meet the pleading requirements in Rule 8.[5] *See id.* at PageID 136–38. The Court is unpersuaded by Defendants' attempt to extinguish all Plaintiff's claims on that basis.

Fed. R. Civ. P. 8(a)(2) states that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In addition, Rule 8 pleadings must also comport with the foregoing *Twombly/Iqbal* standard. *See* Section II, *supra*. Pursuant to Rule 8, the Sixth Circuit permits plaintiffs to group defendants together in the allegations in their complaint so long as it gives the defendants notice of the claims against them and the grounds upon which it rests. *Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp. 3d 929, 934–35 (S.D. Ohio 2023) (citing *Twombly*, 550 U.S. at 545). At the pleadings stage, the practice is sufficient where discovery will help expose who will have any actual responsibility. *Igo*, 652 F. Supp. 3d at 934 n.2 (citing *Gordon v. B. Braun Med. Inc.*, No. 1:19-CV-121, 2020 WL 1491378, at *11 (S.D. Ohio Mar. 27, 2020)). Similarly, "there is . . . no categorical rule against describing defendants—particularly affiliated corporate defendants with a history of acting in concert—by using collective language, if

---

[5] Though Defendants argue that Plaintiff's "collective reference to 'Defendants' . . . fails to meet rule 12(b)(6) pleading requirements," Doc. 19-1, PageID 136, this Court construes Defendants' argument to refer to Fed. R. Civ. P. 8(a) rather than Fed. R. Civ. P. 12(b)(6).

doing so is appropriate in the context of a particular case." *Id.* (quoting *Nissan N. Am., Inc. v. Cont'l Auto. Sys.*, No. 3:19-cv-396, 2019 WL 4820477, at *4 (M.D. Tenn. Oct. 1, 2019)). "Indeed, it is common for plaintiffs, who often lack information about the internal division of responsibilities in corporate families, to name several affiliated corporate defendants collectively, with the expectation that their understanding of the corporate family will be enhanced in discovery." *Nissan*, 2019 WL 4820477, at *4. There are many examples within this District and across this Circuit of courts that have permitted plaintiffs to group defendants together where corporate defendants have been alleged to have collectively engaged in misconduct.[6]

For example, the plaintiff in *Igo* brought an action against multiple insurance entities. *Igo*, 652 F. Supp. 3d at 932. The plaintiff grouped the three defendants—a life insurance company, the policyholder of the plan, and the plan administrator—together in their complaint. *Id.* at 932–33. Like Defendants here, the *Igo* defendants filed a motion to dismiss alleging impermissible group pleading. *Id.* at 934. Despite the plaintiff's choice to group the

---

[6] Widespread allowance of grouping defendants together was affirmed in *Igo v. Sun Life Insurance. Igo*, 652 F. Supp. 3d at 635. *See also Berry v. Cahoon*, 731 F. Supp. 2d 685, 688 (S.D. Ohio 2010) ("[T]his Court finds that each Defendant can be identified in this case and the Defendants do not have to be addressed separately if the Plaintiffs are alleging that all Defendants are liable under the same causes of action."); *Gold Crest, LLC v. Project Light*, LLC, 525 F. Supp. 3d 826, 835 (N.D. Ohio 2021) ("collecting the three [defendants] under a defined term then claiming all three are liable for the same misconduct is, at the pleading stage, sufficient to give each of them notice of the claims alleged against them."); *Hale v. Enerco Grp., Inc.*, No. 1:10-cv-00867-DAP, 2011 WL 49545, at *4 (N.D. Ohio Jan. 5, 2011) ("While Plaintiffs have made allegations that multiple Defendants have engaged in the same conduct, those allegations are plausible and raise a reasonable expectation that discovery will reveal evidence to support their claims. In short, Defendants have adequate notice of Plaintiffs' claims and the grounds upon which they rest."); *Nissan N. Am., Inc. v. Cont'l Auto. Sys.*, No. 3:19-cv-396, 2019 WL 4820477, at *4 (M.D. Tenn. Oct. 1, 2019) ("no categorical rule [exists] against describing defendants—particularly affiliated corporate defendants with a history of acting in concert—by using collective language, if doing so is appropriate in the context of a particular case. Indeed, it is common for plaintiffs, who often lack information about the internal division of responsibilities in corporate families, to name several affiliated corporate defendants collectively, with the expectation that their understanding of the corporate family will be enhanced in discovery.").

defendants together, the *Igo* court found that each defendant was on notice of all the claims in the complaint being asserted against them. *Id.* at 935 ("Although Plaintiff must ultimately prove its case separately against Sun Life, Sagewell, and BASG, the complaint sufficiently puts Sagewell and BASG on notice of their alleged misconduct in the scheme of administering the Plan and paying and denying benefits under the Plan."). In *Igo* the court ruled that the defendants' motion to dismiss was meritless as to the plaintiff's group pleading. *Id.* at 934.

This Court makes a similar finding here. Shah's Complaint puts all Defendants on notice of that the claims being asserted against each one of them. *See generally* Doc. 1, PageID 11–12.[7] To be sure, Shah concedes that he is unaware of exactly which of the Defendants is responsible for either of the 2019 or 2021 Employment Contracts. Doc. 20, PageID 144. This predictable confusion is shown by the language and layout of each Contract.

As to the 2019 Employment Contract, both Fortive and ASP were listed as the entity extending an employment offer to Plaintiff. Doc. 1-1, PageID 15 ("I am delighted to extend you an offer of employment with Fortive in connection with *its pending acquisition of Advanced Sterilization Products (Fortive/ASP)* and am confident that your background and experience will allow you to make major contributions to *the Company*") (emphasis added). Similarly, in the margin of the 2019 Employment Contract, both "Fortive" and "ASP" are listed. Just below that listing, the 2019 Employment Contract states a common "Human Resources" address for both entities. Doc. 1-1, PageID 15.

---

[7] After Plaintiff listed his five claims asserted against Defendants, he then writes: "Plaintiff Nilesh Shah prays that judgment be entered in his favor against Defendants Fortive Corporation, Advanced Sterilization Products, Inc., and Advanced Sterilization Products Services, Inc., jointly and severally, as follows[,]" after which Plaintiff re-lists all five of his claims previously mentioned and their respective requests for relief. Doc. 1, PageID 11–12.

The 2021 Employment Contract's letterhead, on the other hand, lists ASP as the entity that contracted with Plaintiff. *See* Doc. 1-2, PageID 18–20. But Fortive is listed in the body of that Contract multiple times:

- You will be eligible to participate in the *Fortive* 401k retirement plan . . . .

- A recommendation will be made to the Compensation Committee of Fortive Corporation's Board of Directors to grant you an equity award as part of *Fortive's* equity compensation program . . . .

- Any equity awards approved by the Compensation Committee would vest . . . and will be solely governed by the terms and conditions set forth in *Fortive's* applicable stock incentive plan . . . .

- The target award value of any grant(s) will be split evenly between stock options and RSUs and will be converted . . . based on the standard methodology used by *Fortive* as of the date of the grant. The Company *(and Fortive)* cannot guarantee that any RSUs or stock options granted to you will ultimately have any particular value or any value.

*See id.* at PageID 18–19 (emphasis added). Furthermore, Fortive is listed within the body of the 2021 Employment Contract eight times on two different pages. *Id.* And in one provision titled "Incentive Compensation Plan (ICP)," Fortive and ASP are combined with a slash ("Fortive/ASP"), and the 2021 Employment Contract makes their participation indistinguishable to the point of clarifying the Incentive Compensation Plan as the "Fortive/ASP Incentive Compensation Plan ('ICP')." *Id.* at PageID 18.

In sum, it is unclear from the language of the Employment Contracts which company among the three Defendants whose conduct Plaintiff contends is actionable in his Complaint. Viewing the facts most favorably to Plaintiff, the record now before the Court strongly suggests that all three corporate Defendants have a history of acting in concert regarding Plaintiff's employment and each entity is under sufficient notice of the claims against them. Accordingly, Plaintiff's choice of group pleading is permissible under Rule 8.

Defendants argue that Shah's Complaint needs to "state facts specific **to each defendant** . . . ," and "must allege, with particularity, facts that demonstrate what **each defendant** did in order to state a claim." *See* Doc. 23, PageID 347 (citations and quotations omitted). In essence, Defendants seek to have the Court apply the Rule 9 pleading standard to Plaintiff's claims. *See* Fed. R. Civ. P. 9(b), (c) (stating that allegations of fraud or conditions precedent must be pled with particularity); *see also Boxil v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (where the court prohibited group pleading and enforced the particularity standard because of Sixth Circuit precedent where plaintiffs bring damage claims against government officials for alleged constitutional violations) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)).

While the Sixth Circuit does require a heightened pleading requirement in instances where a plaintiff is alleging *fraud* or civil rights violations against multiple defendants or government officials, Plaintiff has not pled fraud or constitutional violations here. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551–52 (6th Cir. 2012) (dismissing a complaint that grouped defendants together against allegations of fraud); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 973 (S.D. Ohio 2019) ("[T]he impermissibility of group pleading is often spoken of in the fraud context because plaintiffs alleging fraud must meet the requirements set out in Federal Rule of Civil Procedure 9(b).") (quotations omitted); *Heyward v. Cooper*, 88 F.4th 648, 661 (6th Cir. 2023) ("[The Sixth Circuit] has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."). This is not a case where the heightened pleading standards

under Rule 9 or constitutional torts apply. Rather, in this case the more relaxed short and plain statement requirements under Rule 8 govern.[8]

Based on the foregoing, Plaintiff's Complaint satisfies the Rule 8 pleading standard for grouping Defendants under a common identifier.

## B.    Plaintiff's Claims.

Plaintiff groups each of the claims asserted in the Complaint, into five categories. Each claim will be addressed in sequence.

### i.    Plaintiff Has Plausibly Alleged a Claim for Breach of Contract Regarding His Singapore Tax Obligations (Count I).

Plaintiff states a plausible claim for breach of contract against Defendants based on the express language contained in his Employment Contracts. Plaintiff claims that the Defendants owe him for back taxes which he must pay Singapore because the Employment Contracts mandate that Defendants make those payments. Doc. 1, PageID 8–9. Plaintiff argues that the language "[t]he company will also pay for tax assistance while on assignment to Singapore which includes Singapore tax obligations" is a clear and unambiguous commitment to pay his accrued Singaporean tax debt. Doc. 20, PageID 148. Defendants disagree and argue that the language "tax assistance" in the Employment Contracts does not "confer any [such] obligation . . . based on plain meaning." Doc. 19-1, PageID 139.

_____

[8] Defendants misinterpret the Sixth Circuit's holdings regarding the grouping of several defendants in a complaint. Defendants argue that "[t]his Court has dismissed complaints pursuant to Rule 12(b)(6) that 'lump[] together' all defendants rather than 'directing specific allegations at specific individuals," Doc. 19-1, PageID 137 (quoting *Stanley v. Arnold*, No. 1:12-cv-482, 2012 WL 5269147, at *7 (S.D. Ohio Oct. 23, 2012) (citation omitted)). *Stanley* involved a derivative shareholder action under Fed. R. Civ. P. 23, in which the court required particularized facts be pled against each of the named 22 director defendants. *Stanley*, 2012 WL 5269147, at *7. But this is not a shareholder derivative action, thus the *Stanley* decision has no application here.

Breach of contract claims must be proved under the appropriate state law. *Kunz v. United Food & Com. Workers, Loc.* 876, 5 F.3d 1006, 1010 (6th Cir. 1993). To state a breach of contract claim under Ohio law,[9] "a plaintiff must plausibly allege 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" *Mitchell v. Fujitec Am., Inc.*, No. 1:20-CV-363, 2022 WL 836424, *8 (S.D. Ohio Mar. 21, 2022) (quoting *Johnson v. Delphi Corp.*, 261 F. Supp. 2d 955, 961 (S.D. Ohio 2003)).

The express language of the Employment Contracts and the parties alleged performance of the same support Plaintiff's claim. The Employment Contracts both state that "[t]he company will also pay for tax assistance while on assignment to Singapore, which includes Singapore tax obligations . . . ." *Id.* at PageID 4–5. The use of the term "will" in these provisions can plausibly be understood to formulate a unilateral commitment by Defendants. *See, e.g., Baker v. Bensalz Prods.*, 478 F. Supp. 3d 618, 621 (S.D. Ohio 2020) (explaining the force and effect of contractual terms like "will"). Indeed, contrary to the position they now take, Defendants upheld this alleged contractual commitment by paying Plaintiff's 2020 Singapore taxes. Doc. 1, PageID 6. Under the circumstances, it is plausible to conclude that the contractual arrangement between the parties called for Defendants to continue paying Shah's Singapore taxes in each of the other years of Plaintiff's employment with Defendants.[10]

---

[9] The Court may exercise jurisdiction over this matter on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332. "Federal courts apply the substantive law of the forum state . . . ." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). The parties signed the employment contracts agreeing that Plaintiff's position is based in Cincinnati, Ohio, Doc. 1-1, PageID 15, which is the same state where Plaintiff alleges that he resides, Doc. 1, PageID 3. Furthermore, none of the Defendants disputed Plaintiff's claims of residency in the state of Ohio. Defendants also cite Ohio case law in disputing Plaintiff's implied contract claims. *See* Doc. 23, PageID 354. Therefore, the Court will apply Ohio law.

[10] The Court notes that Defendants' own accounting firm allegedly supports Plaintiff's position. KPMG notified Plaintiff that what happened in 2020 was not an anomaly, and nothing was owed back to Defendants based on the tax reimbursement he received. *Id.* at PageID 5–6.

Based on the above, Plaintiff has stated a plausible breach of contract claim and Defendants' Motion to Dismiss is **DENIED** on that basis as to this claim.

### ii.    The Court Dismisses Plaintiff's 28 U.S.C. § 2201 Claim (Count II).

Defendants seek to dismiss Plaintiff's claim for declaratory relief under 28 U.S.C. § 2201. As the result of his employment with Defendants, Plaintiff seeks to have the Court declare that Defendants are obligated to pay all of Plaintiff's Singapore taxes incurred in 2019, 2020, 2021 and 2022. Doc. 1, PageID 9. Plaintiff also seeks an order declaring that he does not owe Defendants any portion of the 2020 reimbursement that he already received from them. *Id.* at PageID 10. Ostensibly, Plaintiff's declaratory judgment claim seeks the same relief as his breach of contract claims.

Based upon the relief requested under this claim, this is not an appropriate case for a declaratory judgment action. The Sixth Circuit recognizes that:

> The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.' But [Section] 2201 does not create an independent cause of action.

*Davis v. U.S.*, 499 F.3d 590, 594 (6th Cir. 2007) (quoting 28 U.S.C § 2201). Declaratory relief is a remedy applied most often before an injury-in-fact occurs. *Gregor v. Rice Drilling D, LLC*, No. 2:21-cv-3999, 2024 WL 168119, at *3 (S.D. Ohio Jan. 16, 2024) (citing *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). As a result, courts have found that "declaratory relief is inappropriate when the 'claims have already ripened into a cause of action.'" *Id.* (quoting *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012)). Moreover, when the request for declaratory relief is redundant alongside a valid breach of contract claim, like we have here, courts will dismiss

the Section 2201 cause of action as duplicative of the breach of contract claim. *See Gregor*, 2024 WL 168119, at *3 (citing *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 908 (6th Cir. 1999); *McGlone v. Centrus Energy Corp.*, No. 2:19-cv-2196, 2020 WL 4431482, at *16 (S.D. Ohio July 31, 2020)).

Here, Plaintiff's claims have already ripened to a cause of action, and Plaintiff has sought damages under several theories. In sum, his request for declaratory relief reflects the exact request presented in the First Count of the Complaint for breach of contract. To be clear, Plaintiff's request for relief on the breach of contract claim states:

> [Plaintiff] is entitled to immediate and permanent injunctive relief ordering Defendants to reimburse Mr. Shah for his Singapore tax obligations for the portion of 2019 that he was employed by Defendants, to pay his Singapore tax obligations for 2021 and for the portion of 2022 during which he was employed by Defendants, and to cease their demand that he repay them a portion of the 2020 Singapore taxes they paid.

Doc.1, PageID 9.

> By comparison, Plaintiff's Section 2201 claim reads similarly as follows:

> Plaintiff is entitled to and seeks a declaratory judgment from the Court determining that under the terms of the 2019 and 2021 Contracts Defendants are obligated to pay all of Plaintiff's Singapore taxes incurred in 2019, 2020, 2021 and 2022 as the result of his employment with Defendants, and ordering Defendants to immediately pay such obligations for 2021 and 2022 and to reimburse Plaintiff for the 2019 obligation. Plaintiff further asks for an order that Defendants cease their demands that he repay them a portion of the Singapore taxes they paid in connection with Plaintiff's employment in 2020.

*Id.* at PageID 9–10.

In short, both claims in the Complaint express identical requests for relief from the Court as the one seeking a declaration that Defendants must pay all the Singaporean taxes Plaintiff may still be owed, that Defendants must pay for the period of Plaintiff's employment

that Defendants have yet to cover, and that Defendants be prevented from further requesting tax repayment from Plaintiff.

In this case, and as has been held in others, "the validity and enforceability of the contracts have already been placed at issue, and Plaintiff['s] claim for damages is a better and more efficient remedy." *Miami Valley*, 852 F. Supp. 2d at 938. Thus, the Court finds that Plaintiff's declaratory judgment claims is duplicative and should be dismissed. *Id.* 852 F. Supp. 2d at 938–39 (dismissing declaratory judgment claim because relief sought was redundant in light of relief sough for breach of contract); *Florists' Transworld Delivery, Inc. v. Fleurop–Interflora*, 261 F.Supp.2d 837 (E.D. Mich. 2003) (same).

For the reasons provided, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's claim under 28 U.S.C. § 2201.

### iii. Plaintiff Fails to Plausibly Allege Racial Discrimination Under 42 U.S.C. § 1981 (Count III).

The Court turns next to Plaintiff's racial discrimination claim. Shah alleges that he was terminated despite his excellent performance, and that his firing was due to racial discrimination in violation of 28 U.S.C § 1981 as an India-born person.[11] Doc. 1, PageID 6, 10. The main thrust of Defendants' Motion to Dismiss the Section 1981 claim centers upon Plaintiff's failure to satisfy the basic federal pleading standards under *Twombly/Iqbal*. *See* Doc. 23, PageID 344.

---

[11] Section 1981(a) provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

To establish a claim of racial discrimination under Section 1981, Plaintiff must show that (1) he belongs to an identifiable class of persons who are subject to discrimination based upon their race; (2) Defendants intended to discriminate against him based upon his race; and (3) Defendants' discriminatory conduct abridged a right enumerated in Section 1981(a). *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006). The second prong (intentional discrimination) can be shown through either direct evidence of discrimination or circumstantial evidence "which would support an inference of discrimination." *Inner City Contracting, LLC v. Charter Township of Northville, Michigan*, 87 F.4th 743, 755 (6th Cir. 2023) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000)). A plaintiff does not need to precisely plead the prima facie case elements but must allege enough facts to allow a court to draw the reasonable inference that the defendants discriminated against him because of his race. *Junhe Qiu v. Univ. of Cincinnati*, No. 1:18-cv-634, 2019 WL 2396664, at *7 (S.D. Ohio June 6, 2019) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)).

In this case, Shah alleges that Defendants violated 42 U.S.C. § 1981 when they "terminated his employment without just cause." Doc. 1, PageID 10. Here, Plaintiff clearly meets the first and third prongs of a rational discrimination claim because he pleads that he is "Indian/Asian"—a member of a protected class—and that his position with ASP was terminated "on or about March 30, 2022." *Id.* at PageID 3. However, Plaintiff has failed to plausibly show that Defendants intended to terminate his employment based on any sort of racial animus. *See Sam Han v. U. of Dayton*, 541 Fed. App'x. 622, 627 (6th Cir. 2013) (dismissing a Section 1981 claim of employment discrimination where the plaintiff's claim was of racial discrimination was not plausible on its face).

Shah contends that after he received his promotion in 2021, his manager, Aisha Berry, treated him "differently . . . in comparison to his peers, none of whom shared his race, ethnicity, or skin color." Doc. 1, PageID 6. Further, Plaintiff alleges that after he conducted a work presentation, Ms. Berry permitted colleagues to give feedback on his presentation, while directing him to respond by only saying "thank you for the feedback." *Id.* While this act might have frustrated Plaintiff, it does not amount to intentional discrimination on the part of Defendants based upon race. Beyond this bald assertion, Shah does not plead any other facts in support of his claim that he was discriminated during his employment predicated on race.

Here, the Complaint contains averments that are both conclusory and not backed by well-pleaded facts. In general terms, Shah seeks to ascribe a racial animus to his termination. Nothing in the record currently before the Court, however, leads to any inference that Defendants discriminated against Plaintiff because of his race. Simply because a plaintiff is a member of a protected class and has had some adverse employment action taken against him, without more specific details or allegations of job-related racial discrimination, does not state a valid claim under 42 U.S.C. § 1981. No plausible claim for relief under 42 U.S.C. § 1981 on these facts has been articulated and that part of the Complaint cannot survive the Motion to Dismiss. *See, e.g.*, *Ramsey v. Frisch's*, No. 1:16-cv-1129, 2016 U.S. Dist. LEXIS 180638, at *2–3 (S.D. Ohio Dec. 9, 2016), *report and recommendation adopted*, No. 1:16-cv-1129, 2017 WL 25553 (S.D. Ohio Jan. 3, 2017) (dismissing a plaintiff's Section 1981 claim where plaintiff failed to plead that he was terminated *because* of his race).

21

Based upon the paucity of evidence even remotely tying Plaintiff's termination from employment to racial discrimination, Defendants' Motion to Dismiss Plaintiff's claim under 42 U.S.C. § 1981 is **GRANTED**.

### iv. Plaintiff Has Stated a Plausible Breach of Contract Claim for Unused PTO (Count IV).

Plaintiff also states a claim for breach of contract based on paid-time-off or PTO benefits that were allegedly due upon his termination by Defendants.[12] PTO is a common benefit that Ohio courts have typically recognized and enforced upon an employee's termination. *See Sexton v. Oak Ridge Treatment Ctr. Acq. Corp.*, 856 N.E.2d 280, 284 (Ohio App. 2006) (collecting cases).

Neither of Plaintiff's Employment Contracts specifically mention PTO. *See* Doc. 1-1, PageID 15; and Doc. 1-2, PageID 18. However, the agreements do provide that Defendants were contractually bound to supply Plaintiff with various undefined employment "benefits." *see* Doc. 1-1, PageID 15; Doc. 1-2, PageID 18. More to the point, the 2019 Employment Contract states that Plaintiff "will be eligible to participate in any employee benefit plan that the Company has adopted or may adopt, maintain, or contribute to for the benefit of its regular employees, subject to satisfying any applicable eligibility requirements." Doc. 1-1, PageID 15. The 2021 Employment Contract reiterates similar language as the 2019 employment agreement Shah signed. *See* Doc. 1-2, PageID 18.

---

[12] While Plaintiff's Complaint states that he pleads a breach of express and implied contract, at this stage in the proceedings the Court will construe them as one since each requires proving the same elements. *Compare Delphi Corp.*, 261 F. Supp. 2d at, 961 (In assessing a breach of implied contract, the court stated: "To prove a breach of contract claim, a plaintiff must show the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.") (internal quotations omitted), *with Fujitec Am., Inc.*, 2022 WL 836424, at *8 (express breach of contract requires that "[a] plaintiff must plausibly allege 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'") (quoting *Delphi Corp.*, 261 F. Supp. 2d at 961).

In his Complaint, Plaintiff alleges that one of the benefits included in the Employment Contracts he entered with Defendants was PTO, that he had accrued a significant amount of PTO at the time of his termination, and that Defendants now refuse to compensate him for the unused PTO post-termination. Doc. 1, PageID 6, 10.

To be sure, Plaintiff's entitlement to PTO benefits predicated on this claim in the Complaint, or lack thereof, will be more fully ferreted out during discovery. However, viewing all the allegations expressed in the Complaint as true, as is required at this stage of proceedings, Plaintiff has clearly stated a valid claim for breach of contract. The Complaint alleges that Shah was a covered employee under similar clauses in his 2019 and 2021 Employment Contracts as other employees and that he accrued significant paid-time-off benefits pursuant to those clauses. It further alleges that Defendants generally pay covered employees all unused, accrued PTO benefits they qualify for upon separation from the companies. And finally, the Complaint contends that after Shah made a request for PTO benefits, Defendants refused to pay him in breach of the employment agreements.

At the pleading stage, based on the facts alleged in the Complaint, Plaintiff has plausibly alleged a breach of contract claim concerning unused PTO. Thus, Defendants' Motion to Dismiss Count IV of the Complaint charging the Defendants with breaching the Employment Contracts by refusing to pay PTO benefits after his termination is **DENIED**.

### v.    The Court Dismisses Plaintiff's Unjust Enrichment Claim (Count V).

Finally, Plaintiff alleges, in the alternative, that the breach by Defendants of the PTO benefit clauses of his Employment Contracts should also qualify him for payment of damages under an unjust enrichment theory. Doc. 1, PageID 11. By contrast, Defendants argue that Plaintiff fails to state a claim because the Employment Contracts make absolutely no mention

of PTO. Moreover, Defendants contend that, under these circumstances, its refusal to pay Shah for unused PTO was neither inequitable, nor justification for this Court to grant any monetary relief to Shah under a theory of unjust enrichment. Doc. 19-1, PageID 140. In response, Plaintiff argues that "the parties' contracts clearly provided for PTO benefits." Doc. 20, PageID 143.

Because Plaintiff alleges that PTO benefits are *explicitly* covered by the 2019 and 2021 Employment Contracts, the Court finds that Plaintiff's unjust enrichment claim must fail as a matter of law. To state a claim for unjust enrichment under Ohio law, Plaintiff must plausibly allege that (1) he conferred a benefit on Defendants; (2) Defendants had knowledge of the benefit; and (3) Defendants retained the benefit under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984). Recovery under unjust enrichment is designed to compensate plaintiffs for the benefit they have conferred upon another, not to compensate them for a loss suffered. *Hughes v. Oberholtzer*, 162 Ohio St. 330, 123 N.E.2d 393, 397 (1954).

Moreover, unjust enrichment "operates in the absence of an express contract to prevent a party from retaining money or benefits that in justice and equity belong to another." *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 646 (N.D. Ohio 2012) (cleaned up). The cause of action arises out of a "quasi-contract implied by the court." *Bush Truck Leasing, Inc. v. Cummins, Inc.*, No. 1:18-cv-871, 2020 WL 3871322, at *8 (S.D. Ohio July 9, 2020) (quotations omitted). "Under Ohio law, a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Bihn v. Fifth Third Mortg.* Co., 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) (citing *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787,

799 (6th Cir. 2009)). However, "unjust enrichment claims may be pled in the alternative to a breach of contract claim when the existence of a contract is in dispute." *Id.*

Here, Plaintiff's claim for unused PTO is based on both an express contract and a quasi-contract basis. Doc. 1, PageID 10–11. Defendants do not challenge the existence of the Employment Contracts; Defendants challenge only that the Employment Contracts do not confer Plaintiff with any PTO benefits. Doc. 23, PageID 354–55. Accordingly, the existence of the Employment Contracts is not in dispute. Because Plaintiff alleges that he accrued PTO under the Employment Contracts with Defendants, and those Contracts control whether he is owed any PTO benefits, his unjust enrichment claim fails as a matter of law. *See, e.g., Marietta Health Care Physicians, Inc. v. Yoak*, No. 2:19-CV-5626, 2022 WL 255664, at *5 (S.D. Ohio Jan. 27, 2022) ("A valid contract defines the obligations of the parties *as to matters within its scope*, displacing to that extent any inquiry into unjust enrichment.") (emphasis in original) (quoting Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (2011)).

For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss as to Count V of the Complaint.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Doc. 19). Specifically, the Court **GRANTS** the Motion (Doc. 19) only with respect to Counts II, III, and V and **DISMISSES** those claims **WITH PREJUDICE**. The Court **DENIES** the Motion to Dismiss (Doc. 19) in all other respects. The case shall proceed as to Counts I and IV against Defendants.

**SO ORDERED**

June 27, 2024

Jeffery P. Hopkins
United States District Judge