**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

NILESH SHAH,

    Plaintiff,

v.

FORTIVE CORPORATION. et al.,

    Defendants.

Case No. 1:22-cv-312

Hopkins, J.
Bowman, M.J.

**MEMORANDUM ORDER**

This matter came before the undersigned for an informal discovery dispute between Plaintiff and Defendants. After reviewing the parties' submissions and hearing oral arguments, the Court **DENIES** Plaintiff's oral request for a protective order to preclude Defendants from compelling him to appear in person for his deposition, and Defendants' oral request for a protective order to preclude Plaintiff from taking a Rule 30(b)(6) deposition prior to scheduling other depositions.

**I.    Background**

In two prior orders, the Court set out the relevant background of this case. (Docs. 14, 26.) The undersigned draws liberally from the Court's prior orders, as well as from Plaintiff's amended complaint, to provide the following summary underlying the pending discovery dispute.

Plaintiff, born in India, is a naturalized United States citizen who alleges that he worked overseas for three related companies as a sales executive beginning in May

1

2019.[1] Defendant ASP is a Delaware corporation with its principal place of business in Irvine, California. (Doc. 37, PageID 475.) Defendant ASPS does business in Ohio but is a New Jersey corporation also headquartered in Irvine, California. *Id*. Defendant Fortive is a Delaware corporation with its principal place of business in Everett, Washington. Plaintiff alleges that the ASP Entities are both wholly owned subsidiaries of Fortive and engage in business to provide infection prevention products, solutions, and processes to healthcare practitioners and facilities. *Id.*

Plaintiff's complaint cites to two employment contracts dated in 2019 and 2021. The contracts specify that Plaintiff's position was in Cincinnati, Ohio, but that he would reside in Singapore on expat assignment. The 2019 offer of employment contained the following expat allowance: "The company will also pay for tax assistance while on assignment in Singapore which includes Singapore tax obligations and tax filing assistance in Singapore." (Doc. 37, Ex. A, PageID 486.) In 2021, he received a promotion. The 2021 contract contained virtually identical language. (Doc. 37, Ex. B, PageID 489.)

On March 30, 2022, Plaintiff was notified on a short business trip to California that he was being terminated for reasons that included his performance. After his termination, Plaintiff returned to Singapore where he has a residence. On June 2, 2022, he filed suit against Defendants in this Court, alleging multiple claims including a breach of contract relating to the alleged failure of Defendants to pay his Singaporean taxes, and race-based employment discrimination.

---

[1] Plaintiff contends that Defendants are interconnected companies and that as a practical matter he was employed by and worked for all three businesses under the terms of the two Employment Contracts the parties entered in 2019 and 2021. (Doc. 26.)

On June 17, 2022, the Court denied Plaintiff's request for preliminary injunctive relief to require the Defendants to immediately pay Plaintiff's outstanding tax liability to Singapore. The Court denied relief solely based on Plaintiff's inability to establish irreparable harm, without considering the probability of success or any other factors. (Doc. 14, PageID 112.) Contrary to Plaintiff's assertion of irreparable harm including arrest or imprisonment, the Court determined that Singapore law does not provide for automatic or immediate imprisonment or arrest for the failure to timely pay taxes.[2] In addition, Plaintiff himself had testified that he had been advised that if the taxes were not timely paid, he would be assessed penalties and interest – not threatened with imprisonment. (Doc. 14, PageID 110.)

On June 27, 2024, the Court granted Defendants' motion to dismiss two claims that were duplicative of Plaintiff's breach of contract claims. (Doc 26.) The Court also initially dismissed a race discrimination claim, but later amended its judgment and granted Plaintiff leave to file an amended complaint to re-assert that claim with additional factual support. (Docs.31, 36, 37.)

The current discovery deadline is October 20, 2025, with a dipositive motion deadline of December 5, 2025. On August 14, 2025, the presiding district judge referred the case to the undersigned magistrate judge to resolve "all discovery related motions and issues." (Doc. 55.) Pursuant to local practice, and at the parties' request, the undersigned set this matter for an informal discovery conference on August 20, 2025. (Doc. 56.)

---

[2] Under certain circumstances if the taxpayer leaves or tries to leave Singapore without payment, the Comptroller may issue a certificate under Singapore law to prevent the individual from fleeing. But Plaintiff had testified at the hearing that the Comptroller had not issued a certificate that indicated a belief that Plaintiff intended to leave the country without payment, meaning that Plaintiff had no evidence of imminent danger of arrest or imprisonment.

**II.      Analysis**

The parties notified the Court that they had exhausted extrajudicial efforts to resolve two discrete discovery issues: (1) whether Defendants may depose Plaintiff in Cincinnati, Ohio where he filed suit or whether they should be limited to deposing Plaintiff remotely; and (2) whether Plaintiff may proceed with a Rule 30(b)(6) deposition at this time.

**A. The Location of Plaintiff's Deposition**

All counsel are located in Cincinnati. Their clients are not. Plaintiff alleges that he is "an Ohio Resident." (Doc. 37, ¶ 10, PageID 476). But he also represents that he currently lives at a Singapore residence. And the Defendant companies are headquartered in Irvine, California and Everett, Washington.

Ordinarily, the time and place of a deposition are set by the party who seeks to take the deposition. And in general, a presumption exists that the plaintiff may be deposed in the forum in which he filed suit. Based on that presumption, Defendants insist that they have the right to depose Plaintiff in person in Cincinnati, Ohio. And they cite various reasons (the complexity of the case and focus on credibility, for example) for their strong preference to depose Plaintiff in person in Cincinnati.

Plaintiff concedes the existence of the presumption that Defendants are entitled to depose him in this district, but argues that this Court should find "good cause" for rebutting the presumption and issuing a protective order that requires the Defendants to conduct his deposition remotely.

> To sustain a protective order under Rule 26(c), the moving party must show "good cause" for protection from one (or more) harms identified in Rule 26(c)(1)(A) "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano*, 699

4

> F.3d at 901 (citations omitted). The enumerated harms available to support a protective order are "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

*In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016).

In the case presented, Plaintiff asserts that requiring him to appear in person rather than remotely imposes an "undue burden" based on two facts: (1) the distance and time required to travel from Singapore to Cincinnati pose a significant hardship and inconvenience to him; and (2) his father was recently diagnosed in India with schizophrenia, requiring Plaintiff to spend significant time to arrange long-term care for his father. Plaintiff rightly points out that videotaped depositions taken remotely are extremely commonplace, particularly following 2020 when the Covid pandemic led to a dramatic increase in such depositions. But the law changes slowly. And at this time, the presumption that the plaintiff may be deposed in person in the district where he filed suit remains. "[T]the fact that depositions by remote means may be an economical and appropriate tool in some instances, at least where the parties agree on the means, or where extraordinary circumstances such as the medical infirmity of a deponent make an in-person examination unreasonably risky, does not mean that good cause has been shown to compel the taking of depositions by remote means across the board for all plaintiffs, based merely on the routine inconvenience and expense that is incident to participation in litigation by any party who chooses to file suit in a forum distant from their residence." *In re Chrysler Pacifica Fire Recall Products Liability Litigation*, 737 F.Supp.3d 611, 618-19 (E.D. Mich. 2024).

Several factors support the Court's conclusion that the factors cited by Plaintiff fall short of "good cause" to avoid his in-person deposition in this case. Although "undue

burden" is not restricted to the issue of expense, it is worth noting that Plaintiff here does not claim any financial hardship. The costs of travel appear to be relatively slight in comparison to the significant monetary damages that Plaintiff seeks. Plaintiff does not claim to be other than able-bodied and cites to no physical impediments to travel. Last but not least, Plaintiff – a naturalized citizen since 2001 - alleges that he remains a resident of Ohio, despite currently living at a residence in Singapore. To the extent that Plaintiff alleges that he remains an Ohio resident who willingly filed suit in his avowed state of residency, the presumption that he may be deposed in that state is and should be difficult to overcome.

Plaintiff argues that the extreme travel time and distance required to return to Ohio - allegedly 40,000 miles over a period of more than 48 hours - alone should be sufficient to prove undue burden. But if the Court accepted that argument, any expatriate – including one who continues to claim residency in the forum state – could always avoid an in-person deposition by citing the mere inconvenience of travel. There may be times where an expatriate will be able to show "good cause," such as when the plaintiff does not claim residency in the state in which he filed suit, or cites to financial hardship or health issues that add to the burden of an in-person deposition. But that is not the case here.

The Court also has considered Plaintiff's argument regarding his recent need to help arrange care for his family member, but finds that assertion of burden to be only slightly more persuasive. Plaintiff does not live in India where his father resides. And counsel had no information on how often Plaintiff is required to take the roughly 6-hour flight to attend to his father in person. Based on the lack of such information, the Court presumes that the necessary arrangements are primarily being handled by Plaintiff

remotely, and that any hardship is based only on Plaintiff's apprehension of being physically further away from his father in India for the brief period of time during which he would be required to be in the United States for his deposition. *Compare*, *e.g.*, *In re Chrysler Pacifica Fire Recall Products Liability Litigation*, 737 F.Supp.3d 611, 619 (E.D. Mich. 2024) (holding that plaintiffs who had specific physical conditions, or who were sole physical caretakers for nearby elderly parents or other members of their households with special needs, had established "good cause" for remote depositions on grounds that travel was unduly burdensome).

Despite finding an insufficient showing of good cause for a remote deposition, Defendants offered a compromise during the telephone conference whereby they would work with Plaintiff to avoid conflicts with scheduled travel to India. In addition, defense counsel offered to permit Plaintiff to attend his deposition in California, where two of the defendant companies are headquartered. A nonstop flight to either Los Angeles or Seattle rather than to Cincinnati, Ohio significantly reduces the burden of Plaintiff's travel time from Singapore, including the secondary impact of being physically located a greater distance from his ailing relative.[3] The Court greatly appreciates defense counsel's offer of compromise on this issue, and expects defense counsel to hold to that offer, should Plaintiff prefer to be deposed at Defendants' corporate headquarters rather than in Cincinnati.

### B.  The 30(b)(6) Deposition

The second area of impasse concerns Plaintiff's desire to schedule a Rule 30(b)(6) deposition. Defendants object to proceeding with a Rule 30(b)(6) deposition before

---

[3]Singapore Airlines offers direct flights to Los Angeles as well as to Seattle. The flight from Singapore to Seattle appears to be the shortest in duration, at less than 15 hours.

7

Plaintiff first proceeds with other witness depositions. But the Court finds no merit to Defendants' attempt to dictate the order in which Plaintiff chooses to conduct discovery, nor does the Court find that Defendants have established good cause for a protective order under Rule 26(c). Thus, Plaintiff will be permitted to take the 30(b)(6) deposition that he seeks.

Plaintiff originally noticed the deposition for Cincinnati. Defendants further argue that their Rule 30(b)(6) deponent should not be required to travel, but should instead be permitted to remain at corporate headquarters. The Court agrees. But to the extent that Plaintiff prefers to take the deposition remotely rather than to travel to corporate headquarters himself, the Court will permit it under Rule 30(b)(4), Fed. R. Civ. P. Unlike the reasons that Defendants cite in favor of their right to take Plaintiff's deposition in person, they offered no persuasive arguments as to why they would be disadvantaged if Plaintiff's counsel is permitted to question their Rule 30(b)(6) witness remotely. The only specific concern voiced by defense counsel was the possibility of technological delays during the course of a remote deposition. But such delays can easily be avoided by transmission in advance of the scheduled deposition, either to defense counsel directly or to a third party such as a court reporter.

### C. Additional Discovery-related Concerns

During the telephonic hearing, defense counsel raised an additional concern about Plaintiff Shah's alleged direct contact with one or more of Defendants' officers or employees outside the presence of counsel. In support of a request for an order that broadly prohibits such contact, defense counsel cited to an ethical rule that prohibits Plaintiff's *counsel* from contacting a represented opposing party, and further asserted that

8

Shah's actions could be perceived as intimidating. Counsel strongly disagree about the propriety of direct consensual contact between opposing parties outside of their presence. But it was apparent to the Court that they have not exhausted their attempts to resolve this dispute without the intervention of the Court. In the absence of said exhaustion by counsel or more specific information about the dispute, the Court declines to address it.

### III. Conclusion and Order

For the reasons stated, **IT IS ORDERED THAT**:

1. Plaintiff's construed oral motion for a protective order to preclude the taking of his deposition in person is **DENIED**;

2. Defendants' construed oral motion for a protective order to preclude Plaintiff from choosing to first take a Rule 30(b)(6) deposition is also **DENIED.**

*s/Stephanie K. Bowman*
United States Chief Magistrate Judge