**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NILESH SHAH,                              :
                                          :
    *Plaintiff,*                     :
                                          :  Case No. 1:22-cv-00312
v.                                        :
                                          :  Judge Jeffery P. Hopkins
FORTIVE CORPORATION, *et al.,*            :
                                          :
    *Defendants.*                    :
                                          :

---

**OPINION AND ORDER**

---

As one court observed, "[l]itigation is not a game. It is the timehonored-method of seeking the truth, finding the truth, and doing justice."[1] Before the Court is Defendants' Fortive Corporation, Advanced Sterilization Products, Inc., and Advanced Sterilization Products Services, Inc. (collectively, "Defendants")[2] Motion to Strike (Doc. 94) (the "Motion") the declarations of two of Defendants' former employees offered by Plaintiff Nilesh Shah ("Plaintiff" or "Mr. Shah") in support of his Motion for Partial Summary Judgment (Doc. 77) against Defendants. Mr. Shah filed a response opposing (Doc. 101) the Motion to Strike to which Defendants replied (Doc. 105). The Court heard oral argument in this matter on April 22, 2026, and took the Motion to Strike (Doc. 94) under advisement. Notation Order, 4/22/26.

---

[1]  *Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122, 1126 n.1 (9th Cir. 2015) (quoting *Haeger v. Goodyear Tire & Rubber Co.*, 906 F. Supp. 2d 938, 941 (D. Ariz. 2012)).

[2]  Defendants Fortive Corporation, Advanced Sterilization Products, Inc., and Advanced Sterilization Products Services, Inc. are collectively referred to as "Defendants" in this Opinion and Order. Separately, Fortive Corporation is referred to as "Fortive"; Advanced Sterilization Products, Inc. as "ASP"; and Advanced Sterilization Products Services, Inc. as "ASPS." Defendants ASP and ASPS are both wholly owned subsidiaries of Defendant Fortive. *See* Am. Compl., Doc. 37, ¶ 8; Ivankovich Decl., Doc. 75, ¶ 2; Doc. 78, PageID 1023.

1

The Motion to Strike and the opposition to it reflect the parties' competing efforts to use the discovery and evidentiary rules to shape the record in the manner most advantageous to them but in so doing push the boundaries of those rules. Mr. Shah attempts to supplement the record with new declarations of key witnesses filed; Defendants respond by moving to strike those declarations and by submitting a new declaration of their own from one of the witnesses. However, the Federal Rules of Evidence and Civil Procedure do not dictate such a restrictive approach and the Court declines to adopt one here. Accordingly, for the reasons provided below, Defendants' Motion to Strike (Doc. 94) is **DENIED**.

## I. BACKGROUND

This case arises from an employment contract dispute between Mr. Shah and Defendants, his former employers. *See* Am. Compl., Doc. 37. Mr. Shah alleges in the Amended Complaint that Defendants are obligated to cover his foreign tax liabilities incurred while he was working for Defendants as an expatriate in Singapore. *Id.* ¶¶ 21–22. During discovery, Mr. Shah identified former executives Aliza Scott ("Ms. Scott") and Dominic Ivankovich ("Mr. Ivankovich") as persons who possessed information relevant to those allegations. Ds.' Ex. 1, Doc. 105-1, PageID 3253–54. On September 11, 2024, Mr. Shah served his initial disclosures and identified Ms. Scott, ASP's former Vice President of Human Resources, and Mr. Ivankovich, ASP's former President, as persons likely to have "discoverable information" that he would use "to support his claims and defenses, including . . . information regarding Defendants' breaches of express and/or implied contracts . . . and the resulting emotional distress and damages suffered by Plaintiff." *Id*. Consistent with that disclosure, Mr. Shah later identified Ms. Scott and Mr. Ivankovich in his Disclosure of Lay Witnesses (Ds.' Ex. 3, Doc. 105-3) filed on February 24, 2025, and in his Responses to

Defendant Fortive Corporation's First Interrogatories and Requests for Production (Ds.' Ex. 2, Doc. 105-2), listing each as lay witnesses "who may testify at the trial" and stating that they "may have information regarding Defendants' breaches of contract . . . and the impact they had on Plaintiff." Ds.' Ex. 3, Doc. 105-3, PageID 3281; Ds.' Ex. 2, Doc. 105-2, PageID 3261.

During this litigation, Mr. Shah disclosed and then produced declarations he had obtained from Mr. Ivankovich and Ms. Scott to Defendants.[3] Ds.' Ex. 1, Doc. 94-1, PageID 3051–54. Importantly, for determining the outcome in this dispute, Ms. Scott and Mr. Ivankovich both testified in their respective declarations that they were directly involved in negotiating the terms of Mr. Shah's 2019 employment letter, central to the dispute in this litigation. Ivankovich Decl., Doc. 75, ¶¶ 6, 11; Scott Decl., Doc. 76, ¶ 3. Important, here, also, Mr. Ivankovich avers that he and other senior leaders negotiated the tax assistance provisions personally with Mr. Shah to ensure that he would not be placed in a worse position financially by virtue of working in Singapore, and that the "agreed-upon tax terms" were drafted in order to protect Mr. Shah from double taxation on his income. Ivankovich Decl., Doc. 75, ¶¶ 8, 10. Adding to the narrative, Ms. Scott's testimony in her declaration went further to state that "as part of Nilesh's compensation," an agreement was made that "ASP would pay the income taxes [Mr. Shah] would owe to Singapore, while [Mr. Shah] would be responsible for paying the income taxes he would owe to the U.S." Scott Decl., Doc. 76, ¶ 5.

---

[3]  The relevant dates are as follows. The Court's Scheduling Order (Notation Order, 10/03/2025) set December 15, 2025, as the discovery deadline. Mr. Shah's counsel obtained Mr. Ivankovich's declaration on December 15, 2025, and produced it to Defendants on January 9, 2026. Ivankovich Decl., Doc. 75, PageID 983; Ds.' Ex. 1, Doc. 94-1, PageID 3051. He obtained Ms. Scott's declaration on January 14, 2026, and presented it to Defendants that same day. Scott Decl., Doc. 76, PageID 989; Ds.' Ex. 1, Doc. 94-1, PageID 3053; Doc. 100, PageID 3152. Both declarations were filed on the docket on January 14, 2026. Docs. 75, 76. It also bears noting that Plaintiff's Motion for Partial Summary Judgment (Doc. 77) and Defendants' Motion for Summary Judgment (Doc. 83) were filed on January 14, 2026, the same day that Mr. Shah filed the declarations of Ms. Scott and Mr. Ivankovich. As of this Opinion and Order, those summary judgment motions (Docs. 77, 83) are currently pending before the Court.

In the Motion to Strike (Doc. 94) currently under review, Defendants oppose the introduction of any of the evidence from both declarations for three separate reasons. First, Defendants argue that Plaintiff's counsel violated procedures purportedly adopted by this Court governing *ex parte* contact with a former employee of an opponent. Doc. 94, PageID 3043. In essence, Defendants claim that Mr. Shah was required to provide them with written notice before obtaining the declarations of its former employees so that Defendants could give informed consent but failed to do so in violation of the procedures purportedly adopted by the Southern District of Ohio. *Id.* at PageID 3043–44. Second, Defendants contend that Mr. Shah also failed to timely disclose the declarations during the discovery period, which closed on December 15, 2025. *Id.* at PageID 3045; Notation Order, 10/3/25.  Lastly, Defendants argue that the declarations constitute inadmissible hearsay and are irrelevant because neither declarant had authority to speak on behalf of Defendants' legal department regarding complex tax matters. *Id.* at PageID 3045–46.

In addition to other documents, Defendants attached to the Motion to Strike (Doc. 94) a second declaration from Mr. Ivankovich. Ivankovich Decl., Doc. 94-2. In the second declaration proffered by Defendants, Mr. Ivankovich states, among other things, that Plaintiff's counsel failed to warn him not to reveal privileged information and that the expatriate provision in Mr. Shah's letter was not intended to provide a "tax windfall" to Mr. Shah. *Id.* ¶¶ 6, 8, 9. Mr. Ivankovich also makes clear in the second declaration that he "did not view Shah's two page, 2019 offer letter as an employment contract." *Id.* ¶ 9 ("The desire of the 2019 offer letter was to assist [Mr.] Shah to be in no worse financial position as it related to his tax returns by virtue of working in Singapore. There was no intent, per the offer letter or otherwise, for [Mr.] Shah to receive a tax windfall by virtue of his employment . . . [t]here

4

was also no intent, per the offer letter or otherwise, for ASP to pay all of Shah's taxes."). In his response opposing the Motion to Strike (Doc. 101), Mr. Shah argues strenuously that the controlling authority permits *ex parte* contact with former employees, that the declarations were not untimely, and that the declarations contain admissible testimony based on the witnesses' personal knowledge. Doc. 101. Defendants filed a reply (Doc. 105), and the matter is now fully briefed and ripe for decision.

## II.    LAW AND ANALYSIS

The Court will address in turn each of the three arguments Defendants have advanced in support of the Motion to Strike (Doc. 94) the declarations of Mr. Ivankovich (Doc. 75) and Ms. Scott (Doc. 76) to wit: (1) Plaintiff's counsel engaged in improper *ex parte* contact with former employees without following required consent procedures; (2) Mr. Shah's counsel untimely disclosed the declarations outside of the agreed upon Rule 26(f) discovery period; and (3) Ms. Scott and Mr. Ivankovich's declarations include inadmissible hearsay and are irrelevant.

### 1. *Ex Parte* Contact with Former Employees

Initially, Defendants contend that Ms. Scott and Mr. Ivankovich's declarations should be stricken on the basis that Plaintiff's counsel failed to comply with this District's informed consent procedures when wanting to obtain declarations from the company's two former high-level employees. Doc. 94, PageID 3043. It is important to note at the outset that both Ms. Scott and Mr. Ivankovich are *former*, not current employees of Defendants. In Defendants' view, however, Mr. Shah's counsel still improperly conducted *ex parte* interviews with them by failing to provide notice to Defendants about the interviews and by not warning

5

Ms. Scott and Mr. Ivankovich against disclosing privileged information during the interviews. *Id.* at PageID 3043–44.

To support this contention, Defendants rely principally upon a magistrate judge's decision in a case called *Summers v. Rockwell Int'l Corp.*, No. C292301, 1993 WL 1480622, at *4 (S.D. Ohio Apr. 9, 1993). In *Summers*, an environmental contamination case, the plaintiffs "raised the issue of their ability to communicate directly with current or former employees of [the] defendant" who may have had information pertaining to hazardous substances being released from the company's plant. *Id.* at *1. When confronted with similar facts as those presented here, the magistrate judge presiding over the *Summers* case imposed specific procedures upon the attorneys involved in that litigation in order to assist the parties during discovery when conducting *ex parte* interviews with the company's former employees. *Id.* at *4–5. Those procedures required, among other things, that counsel seeking the deposition provide the former employee with a one-page written notice advising them that litigation was pending, that the interview was voluntary, that the defendant company was represented by counsel, that the former employee could contact defendant's counsel for further information or retain separate counsel, and that the deponents could not reveal privileged attorney client communications. *Id.*

Defendants argue strenuously that these requirements are the established procedures of the Southern District of Ohio based upon the magistrate judge's decision in *Summers*. Doc. 94, PageID 3043. They, however, are not. *Summers* makes clear that the notice requirements used in that matter were case-specific guidelines proposed by the magistrate judge which the parties in that litigation specifically agreed to follow. *Summers*, 1993 WL 1480622, at *3 (explaining that the guidelines implemented "were suggested to plaintiffs in th[e] case, and

6

they . . . agreed to them"). At best, *Summers* offers guidance for courts grappling with similar discovery issues, but in no way establishes a blanket policy, rule, or procedure of this Court governing *all* cases when a party opponent of a company seeks to engage in *ex parte* communications with a former employee of the company.

Rather, courts in this District look to the Ohio Rules of Professional Conduct to address matters concerning attorney communications with former employees. *See Davis v. Washington Cnty. Open Door Home*, No. C-2-98-636, 2000 WL 1457004, at *5 (S.D. Ohio Sept. 21, 2000); *United States v. McCurdy*, No. 1:24-cr-184-1, 2026 WL 352868, at *2 (N.D. Ohio Feb. 9, 2026) ("There are no established federal rules of professional conduct . . . Instead, federal courts look to state rules of professional conduct."); *Johnson v. Ohio Dep't of Youth Servs.*, 231 F. Supp. 2d 690, 692 (N.D. Ohio 2002) (citation omitted); *United States v. Beiersdorf-Jobst, Inc.*, 980 F. Supp. 257, 261 (N.D. Ohio 1997)*; see also* S.D. Ohio Civ. R. IV(B)[4].

As this Court reads Rule 4.2 of the Ohio Rules of Professional Conduct[5], the one applicable to these proceedings, it prohibits a lawyer, when representing a client, from communicating about the subject matter of the representation with "a person the lawyer *knows* to be represented by another lawyer in the matter" without that lawyer's consent. Prof. Cond. Rule 4.2. By its terms, Rule 4.2 protects *represented* parties. On its face, the Rule does not bar counsel from speaking with *unrepresented* former employees of a company. This interpretation

---

[4]  The local rule, S.D. Ohio Civ. R. IV(B), states, in relevant part: "The Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the highest court of the state in which this Court sits, as amended from time to time by that state court, except as otherwise provided by specific Rule of this Court after consideration of comments by representatives or bar associations within the state." S.D. Ohio Civ. R. IV(B). Because this Court sits in Ohio, it applies the Ohio Rules of Professional Conduct in this Opinion and Order.

[5]  *See* Rule 4.2, Ohio Rules of Professional Conduct (eff. Feb. 1, 2007, as amended eff. Jan. 1, 2026).

is consistent with the views expressed in the advisory opinions of the Ohio Board of Professional Conduct. Sup. Ct. of Ohio Bd. of Prof'l Conduct, Op. 2016-5 (Aug. 5, 2016).

In Advisory Opinion 2016-5, the Board stated the following about contact with a former employee of a corporation by attorneys representing a party suing that corporation:

> Once a management employee has left the corporation, he or she no longer supervises, directs, or consults with the corporation's lawyer and cannot obligate the organization. Former employees cannot bind the organization and their statements cannot be introduced as admissions of the organization. Geoffrey Hazard, Jr. & W. William Hodes, *The Law of Lawyering*, Sec. 38.7 (3d ed. Supp. 2011). Similarly, under the law of agency, the former management employee is no longer acting on behalf of the organization. *See* Mich. Op. RI-360 (2013). *Consequently, a lawyer may communicate on the subject matter of the representation with any former and unrepresented corporate employees, including those in management, without notification or consent of the corporate lawyer.*

Doc. 100, PageID 3165–66 (emphasis added) ("This conclusion is supported by the distinction between current and former employees . . . thus clarifying that a lawyer's communication is permitted with former employees, even those whose prior act or omissions may eventually be imputed to the corporation."). The Board further explained that, because former employees "cannot bind or obligate the organization" and because "their statements cannot be introduced as admissions of the organization . . . communication with a former employee . . . is permissible under Prof. Cond. R. 4.2." *Id*. In Opinion 2016-5, the Board simply reiterated the same conclusion it reached in its 1996 opinion on this same issue. *See* Sup. Ct. of Ohio Bd. of Prof'l Conduct, Op. 1996-1 (Feb. 2, 1996) (stating that "an attorney may communicate on the subject matter of the representation with former employees of the corporation without notification or consent of corporate counsel").

Federal courts in Ohio have routinely applied the same principles with respect to an attorney's ability to interview or obtain information from former employees of a corporation without first having to notify or receive the consent of corporate counsel. In *Johnson*, for

8

example, the court rejected the same argument Defendants advance here when denying a motion to strike an affidavit from the defendant's former employee, by explaining that "ex parte contact with a former employee is not . . . prohibited." *Johnson*, 231 F. Supp. 2d at 692. In reaching this decision, the *Johnson* court relied on *Beiersdorf-Jobst, Inc.*, 980 F. Supp. at 261– 62, which reasoned that "the underlying rationale behind the rule, *i.e.*, maintaining the integrity of the attorney-client relationship, is not undermined by allowing uncounseled interviews with former employees who have no existing relationship with, and therefore cannot bind, a represented corporation."

As the court in *Beiersdorf-Jobst* put it, "the proscription against communications with represented parties does not extend to former employees of a represented corporation." *Id*. at 261. Here, it is undisputed that Mr. Ivankovich and Ms. Scott are *former* ASP employees, albeit managers, with no existing relationship with ASP (or any of the other Defendants) and thus no ability to bind Defendants. *See* Doc. 94, PageID 3043 ("Both declarations were taken from *former* executive level managers.") (emphasis added); *see also* Doc. 100, PageID 3165 ("[A] lawyer may communicate on the subject matter of the representation with any former and unrepresented corporate employees, *including those in management*, without notification or consent of the corporate lawyer.") (emphasis added).

Defendants separately assert that even though Ms. Scott and Mr. Ivankovich are Defendants' former employees, Mr. Shah's counsel still failed to warn them not to divulge any privileged communications prior to receiving their declarations. Ivankovich Decl., Doc. 94-2, ¶ 6 ("I was not informed of the specific details of the claims Shah was making against ASP . . . and that I should not reveal any privileged information."); Ryan Decl. Ex. 1, Doc. 94-1, ¶ 5 ("Counsel for Defendants inquired if either Ivankovich or Aliza Scott had been

9

informed in writing that no attorney-client privileged information should be shared. Plaintiff's counsel indicated that they had not."). According to Defendants, absent the warning, the declarations should be deemed inadmissible.

Having already determined that this Court has no blanket policy or rule governing *ex parte* communications of former employees of a corporation by attorneys of a party opponent, the Court looks again to the Ohio Rules of Professional Conduct for guidance. Defendants argue correctly that Opinion 2016-5 directs counsel to "immediately inform [a] former employee not to divulge any privileged communications" when conducting *ex parte* interviews. Doc. 100, PageID 3166. Importantly, however, Defendants do not identify any specific statement in either declaration in which either Mr. Ivankovich or Ms. Scott revealed any privileged attorney-client communications during the interviews. Instead, Defendants assert only that its two former high-level employees had access to attorney-client privileged information. Ryan Decl. Ex. 1, Doc. 94-1, ¶ 4.

The Court agrees that Plaintiff's counsel should have followed best practices and should have expressly cautioned Ms. Scott and Mr. Ivankovich not to reveal privileged information before interviewing them. That omission, however, does not justify striking both declarations in their entirety, particularly since Defendants cannot show that any privileged information was *actually* divulged. Indeed, a "blanket assertion of . . . privilege is insufficient." *Meyer v. Bank of Am., N.A.*, No. 2:18-cv-218, 2018 WL 6436268, at *3 (S.D. Ohio Dec. 7, 2018) (citation omitted). It should be noted here too that after learning of Mr. Ivankovich's first declaration, Defendants separately interviewed him and obtained a second declaration from him (Ivankovich Decl., Doc. 94-2). Yet Defendants still have not identified any privileged communication that may have been disclosed by either declarant, Mr. Ivankovich or Ms.

10

Scott for that matter. *See Johnson*, 231 F. Supp. 2d at 693 (rejecting motion to strike where defendants had not even "suggested that the . . . affidavit reference[d] information covered by that privilege").

Under the circumstances, we believe Ms. Scott and Mr. Ivankovich's declarations are usable. The result we reach here obtains from the well-established principle that the attorney-client privilege must be construed narrowly because it restricts access to otherwise relevant evidence. *See United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) ("[T]he [attorney-client] privilege is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit"); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). Moreover, to the extent that there may be legitimate concerns about unauthorized disclosures of confidential attorney-client communications by counsel, these can be readily addressed by Defendants when objecting to *specific* questions or portions of testimony. Indeed, as has been noted, courts have a duty to consider only admissible evidence and to disregard any material that could not be admitted at trial. *See Foster v. Americare Healthcare Servs., Inc.*, 150 F. Supp. 3d 868, 870 (S.D. Ohio 2015).

All in all, the circumstances presented in this case militate against the Court invoking the drastic measure of striking wholesale the two declarations of former management employees who have been shown to otherwise possess highly relevant unprivileged testimony. Accordingly, the Court finds that Plaintiff's *ex parte* interviews with Ms. Scott and Mr. Ivankovich did not result in the disclosure of any privileged communications, such that it would provide any bases for striking their declarations in their entirety.

11

### 2. Timeliness of Disclosure of Witness Testimony

Defendants next seek to strike the declarations of Mr. Ivankovich and Ms. Scott by arguing that Mr. Shah's attorneys failed to timely disclose the subject matter of the information they possessed that would be used to support Plaintiff's claims in his Rule 26(a)(1) initial disclosures and in his subsequent interrogatory responses. Doc. 94, PageID 3045; Doc. 105, PageID 3246–47. Mr. Shah, on the other hand, states that he identified both witnesses by name in multiple discovery documents, indicated that they possessed information supporting his claims, and identified them "well in advance of the discovery cutoff." Doc. 101, PageID 3176–79 (stating that "Defendants knew for over a year and three months before the discovery deadline that Mr. Ivankovich and Ms. Scott possessed information relevant to Plaintiff's claims, and that Plaintiff might use them as witnesses in the case").

Rule 26(a)(1)(A)(i) requires parties, such as Mr. Shah, to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—*along with the subjects of that information*—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). In turn, Rule 37(c)(1) provides that if a party fails to provide such information or identify a witness as required by Rule 26(a)[6], "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial," that is, unless that party's "failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

---

[6] Rule 26(e) of the Federal Rules of Civil Procedure imposes a continuing duty on parties to supplement disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or . . . as ordered by the court." *See* Fed. R. Civ. P. 26(e).

The circumstances presented in this dispute closely resemble those resolved by the Sixth Circuit in the *Gipson v. Vought Aircraft Indus., Inc*. decision. There, the plaintiff identified the declarant by name in his initial disclosures as a person likely to have discoverable information but provided little else about that witness's specific knowledge. Later in the proceedings, the plaintiff over the objection of the defendant in that case, sought to submit the witness's affidavit for the first time with his summary-judgment papers. *Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 551–52 (6th Cir. 2010). The Sixth Circuit held that merely listing the witness's name, without fairly describing the subject matter of the person's knowledge, did not satisfy Rule 26(a)(1)(A)(i) and affirmed the district court's decision to strike portions of the affidavit. *Id*. at 554–55.

Mr. Shah's conduct in this case follows a similar pattern as the plaintiff in *Gipson*. Here, Mr. Shah in his initial disclosures, made on September 11, 2024 (Ds.' Ex. 1, Doc. 105-1, PageID 3253–54), identified both Ms. Scott and Mr. Ivankovich as individuals likely to have discoverable information that he might use "to support his claims and defenses, including . . . information regarding Defendants' breaches of express and/or implied contracts . . . and the resulting emotional distress and damages suffered by [Mr. Shah]." On September 16, 2024, Mr. Shah again identified Ms. Scott and Mr. Ivankovich as individuals likely to have discoverable information in Plaintiff's Responses to Defendant Fortive Corporation's First Interrogatories & Requests for Production of Documents. Ds.' Ex. 2, Doc. 105-2, PageID 3261. Further in the proceedings, on February 24, 2025, Mr. Shah also identified Ms. Scott and Mr. Ivankovich as "lay witnesses who may testify at the trial." Ds.' Ex. 3, Doc. 105-3, PageID 3281. As in *Gipson*, these disclosures clearly identified the witnesses by name and indicated that they possessed relevant information but did not describe with any specificity

the knowledge or details generally that these potential witnesses retained to the degree that Ms. Scott and Mr. Ivankovich would later testify to in their declarations. *Gipson*, 387 F. App'x at 554–55.

Likewise, the timing of the declarations filed by Mr. Shah's counsel mirrors *Gipson*. Here, discovery closed on December 15, 2025. Notation Order, 10/3/2025. And counsel for Mr. Shah obtained Mr. Ivankovich's declaration on December 15, 2025, yet did not provide it to Defendants until January 9, 2026, nearly three weeks later. Ivankovich Decl., Doc. 75, PageID 983; Ds.' Ex. 1, Doc. 94-1, PageID 3051. In the case of Ms. Scott, Mr. Shah's attorneys obtained her declaration on January 14, 2026, and provided it to Defendants on the same day—nearly one month after the discovery period ended on December 15, 2025. Doc. 76, PageID 989; Ds.' Ex. 1, Doc. 94-1, PageID 3053. Notably, also, Mr. Shah filed the two declarations on the same day as the dispositive motion deadline on January 14, 2026. Notation Order, 10/03/2025. Taken together, the record shows that although discovery closed on December 15, 2025, Defendants did not receive both declarations—or learn, partially, of the nature and scope of the witnesses' anticipated testimony—until after the close of discovery. In light of the factual similarities between this case and *Gipson*, the Court concludes that Mr. Shah's Rule 26(a) disclosures to Defendants were woefully inadequate and violative of the principles established by the Circuit in that case. Though Mr. Shah identified Ms. Scott and Mr. Ivankovich by name, he did not, during the discovery period, fairly apprise Defendants of the specific subject matter of the testimony that would be the focus of their statements presented in their declarations later.

With the missteps that occurred surrounding the timing of the disclosures being so similar to *Gipson*, Defendants insist that Ms. Scott and Mr. Ivankovich's declarations should

be stricken. However, exclusion of testimony proffered through declarations, under Rule 37(c)(1), is not automatic. As noted, Rule 37(c)(1) provides that if a party fails to provide such information or identify a witness as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial," unless that party's "failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In essence, the Rule establishes exclusion of evidence as the general rule but recognizes two critical exceptions.

As an initial matter, the Court finds little support for any claim that can be made that Mr. Shah's failure to disclose information to Defendants regarding the subject matter of Ms. Scott and Mr. Ivankovich's declarations was substantially justified. More relevant to the discussion here, though, is the determination of whether Mr. Shah's late disclosure of the subject matter of the declarations was harmless. To guide that determination, the Court finds instructive the framework set out by the Sixth Circuit in *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015) adopted from *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014). Under that framework, a trial court assessing whether nondisclosure by a party was harmless may consider a number of factors, including: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Howe*, 801 F.3d at 748 (quoting *Russell*, 763 F.3d at 396–97).

Applying *Howe* to the facts in this case, the Court first considers the surprise factor. Defendants cannot plausibly claim they were unaware of Mr. Ivankovich and Ms. Scott or of the potential relevance of the evidence they possessed in this case. Long before the close of

discovery, Mr. Shah's initial disclosures, interrogatory responses, and witness disclosures identified both individuals as persons with information that Mr. Shah might use to support his claims in the case. Ds.' Exs. 1–3, Docs. 105-1, 105-2, 105-3. Though those disclosures did not recite the precise contents of the later declarations, and there was therefore some element of surprise when the declarations were served, Mr. Shah still put Defendants on notice that he regarded Mr. Ivankovich and Ms. Scott as key witnesses on a central issue: whether Defendants agreed to pay his Singapore taxes. Given their former roles with the company, Defendants must not have been paying attention as this case proceeded or are now sandbagging by feigning ignorance of why Plaintiff listed Mr. Ivankovich and Ms. Scott as witnesses. Neither explanation is credible in light of how contentious this litigation has been on both sides.

Second, as to Defendants' ability to cure any surprise, the timing of Mr. Shah's production did not afford Defendants a realistic opportunity to pursue additional discovery before the dispositive-motion deadline of January 14, 2026. Notation Order, 10/3/2025. Mr. Shah produced Mr. Ivankovich's declaration on January 9, 2026, and Ms. Scott's declaration on January 14, 2026, both of which events occurred *after* the December 15, 2025, discovery cut off. Ds.' Ex. 1, Doc. 94-1, PageID 3051–54. In practical terms, Defendants had only a few days' notice of the substance of Mr. Ivankovich's declaration before the January 14, 2026, dispositive-motion deadline, and essentially no lead time on Ms. Scott's declaration. The Court cannot minimize that concern. *Id.* at PageID 3052 ("This improper disclosure also interferes with our preparing our summary judgment motion . . . due this week.").

At the same time, however, the record also shows that Defendants were able to respond to the substance of the two declarations in meaningful ways. For instance, after

receiving Mr. Ivankovich's initial declaration (Ivankovich Decl., Doc. 75), Defendants themselves contacted Mr. Ivankovich, obtained a second declaration (Ivankovich Decl., Ds.' Ex. 2, Doc. 94-2) and filed that declaration on the docket in support of their Motion to Strike (Doc. 94). In short, both sides have demonstrated an ability to supplement the summary-judgment record with evidence obtained or produced *after* the close of formal discovery, which severely undercuts Defendants' claim of prejudice and shows that any initial surprise was mitigated by Defendants' ability to address both declarations in motion practice and to also develop rebuttal evidence from Mr. Ivankovich himself.

Third, as for the potential for disruption, the Court is unconvinced that allowing the declarations now being proffered by Mr. Shah will have anything more than a modest impact on the proceedings or case schedule. No trial date has been set, nor have Defendants shown that considering this evidence will require any change to existing deadlines. Fourth, the importance of the evidence weighs heavily against exclusion. The declarations from Mr. Ivankovich and Ms. Scott offer first-hand accounts from two key former senior executives of Defendants who had a hand in negotiating Mr. Shah's employment contract relevant to the alleged tax arrangement the company made with him. Ivankovich Decl., Doc. 75, ¶¶ 6, 11; Scott Decl., Doc. 76, ¶¶ 3, 5 ("It was further agreed that, as part of Nilesh's compensation, ASP would pay the income taxes Nilesh would owe to Singapore, while Nilesh would be responsible for paying the income taxes he would owe to the U.S."). Their testimony goes directly to the purpose and meaning of the contractual language at the heart of the dispute in this case. *See* Am. Compl., Doc. 37. Thus, striking these declarations from consideration would remove highly probative evidence and certainly hinder, if not disrupt, the search for truth.

17

Finally, under the fifth prong of the *Howe* factors, the Court finds that Mr. Shah's explanation for not disclosing the evidence to Defendants is completely underwhelming to put it kindly. There are few, if any, strong justifications for Mr. Shah's counsel's conduct in this regard, knowing what he knew about the subject matter of the two witnesses' proposed testimony. Further, he obtained Mr. Ivankovich's declaration on the last day of discovery, December 15, 2025, and delayed producing it to Defendants for several weeks until January 9, 2026. Decl., Doc. 75, PageID 983; Ds.' Ex. 1, Doc. 94-1, PageID 3051. And in the case of Ms. Scott, he obtained her declaration and filed it on the docket on January 14, 2026—well *after* the December 15, 2025, discovery deadline. Scott Decl., Doc. 76, PageID 989; Ds.' Ex. 1, Doc. 94-1, PageID 3053.

However, the delay here is measured in weeks rather than months, and as noted, Defendants were able to respond substantively to the evidence put forth in the first declaration by obtaining a second declaration from Mr. Ivankovich (Ivankovich Decl., Ex. 2, Doc. 94-2) after the discovery deadline, in effect mollifying the potential damage to Defendants' case caused by his earlier testimony. On balance, this imperfect explanation does not tip the scales in favor of the Court excluding the declarations from Ms. Scott and Mr. Ivankovich that Plaintiff is relying on to make his case. Considering all of the *Howe* factors together, the Court concludes that any Rule 26 violations Plaintiff may have committed relating to the Ivankovich and Scott declarations were harmless within the meaning of Rule 37(c)(1).

### 3. Hearsay and Relevance

Finally, Defendants argue that Ms. Scott and Mr. Ivankovich's declarations are hearsay and irrelevant because neither declarant had the authority to speak on behalf of Defendants' legal department. Doc. 94, PageID 3045; Doc. 105, PageID 3248. Under

18

Evidence Rule 801, "[h]earsay is when a party offers an out-of-court statement for its truth." *Garrett v. Sw. Med. Clinic*, 631 F. App'x 351, 358 (6th Cir. 2015). To be specific, the term "hearsay" means that "(1) the declarant does not make [the statement] while testifying at the current trial or hearing; and (2) a party offers [the statement] in evidence to prove the truth of the matter asserted in the statement." *See* Fed. R. Evid. 801(c). To support their contention, Defendants rely on *Garrett* and state that Mr. Ivankovich "has no idea who even drafted the offer letters" at issue in the case. Doc. 94, PageID 3045.

Defendants' reliance on *Garrett* is misplaced, however. *Garrett* involved a plaintiff's attempt to introduce, through *her* own testimony—the statements supposedly made by a coworker concerning what a supervisor allegedly said—a double hearsay problem. *Garrett*, 631 F. App'x at 357–58. In that situation, the plaintiff's coworker also had no authority to relay management statements on the employer's behalf. *Id.* Here, by contrast, the Court is presented with sworn declarations from two former high-level employees, who are themselves recounting their own firsthand observations of their participation in Mr. Shah's hiring and their discussions with him pertaining to his Singapore tax obligations. Ivankovich Decl., Doc. 75, ¶¶ 6, 11; Scott Decl., Doc. 76, ¶ 3. As noted, the matters set forth in the declarations of both these former employees of ASP contain relevant and important information that strikes at the heart of the dispute in this case. Defendants' reliance on *Garrett* is misplaced given that that case does not stand for the proposition that such firsthand testimony grounded in personal knowledge is inadmissible. Indeed, Defendants' decision to pursue and then file their own declaration containing additional testimony from Mr. Ivankovich is difficult to reconcile with their assertion that only the portion of his statements Plaintiff seeks to elicit—rather than all of his statements, including those favorable to Defendants—is inadmissible hearsay. *See*

19

Doc. 105, PageID 3248. In any regard, as earlier noted by this Court, any statements that constitute inadmissible hearsay, when these proceedings reach the summary judgment stage, will simply be disregarded. *See Berry v. Frank's Auto Body Carstar, Inc.*, 817 F. Supp. 2d 1037, 1041 (S.D. Ohio 2011), *aff'd*, 495 F. App'x 623 (6th Cir. 2012); *Ulmer v. Dana Corp.*, 200 F. Supp. 2d 804, 812 (N.D. Ohio 2002), *aff'd*, 115 F. App'x 787 (6th Cir. 2004) (declining to strike affidavits where the objecting party "ma[de] generalized allegations" about lack of personal knowledge and admissibility).

For similar reasons the Court is unpersuaded by Defendants' relevance objections. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *See* Fed. R. Evid. 401. To reiterate, the parties' understanding surrounding who would be responsible for paying the disputed Singapore taxes related to Mr. Shah's employment in that country is central to this litigation. *See* Am. Compl., Doc. 37. Defendants cannot plausibly contend that the testimony of two of the individuals who negotiated the most salient terms contained in that agreement is irrelevant. The record before the Court belies Defendants' argument. On the one hand, Defendants assert that the two declarations are irrelevant but on the other hand they still chose to obtain and file their own declaration from Mr. Ivankovich, effectively conceding that his testimony *is* probative of the issues in this case. Ivankovich Decl., Ds.' Ex. 2, Doc. 94-2. The same logic applies to Ms. Scott's declaration, even though it does not appear that Defendants sought to interview her. Accordingly, Defendants' hearsay and relevance objections do not provide a basis for exclusion of Ms. Scott and Mr. Ivankovich's declarations.

### III.    CONCLUSION

For all the reasons stated, Defendants' Motion to Strike (Doc. 94) is **DENIED**.

   **IT IS SO ORDERED.**

June 17, 2026

Jeffery P. Hopkins
United States District Judge